**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4522-16T2

RELEASEE 1 and RELEASEE 2,[1]

    Plaintiffs-Respondents,

v.

N.G.,

    Defendant-Appellant.

_____

Submitted November 26, 2018 – Decided December 4, 2018

Before Judges Sabatino and Haas.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-8821-16.

Guaglardi & Meliti, LLP, attorneys for appellant (Jason S. Nunnermacker, on the briefs).

McCarter & English, LLP, attorneys for respondent Releasee 1 (Natalie S. Watson, of counsel and on the brief).

---

[1] Pursuant to a stipulation executed by the parties, plaintiff Releasee 2 was dismissed as a party to this appeal with prejudice.

PER CURIAM

Defendant N.G.[2] appeals from the Law Division's June 1, 2017 order enforcing a pre-litigation settlement agreement negotiated between, and consummated by, the attorneys for plaintiffs Releasee 1, Releasee 2, and defendant. Prior to issuing that order, Judge James DeLuca conducted an evidentiary hearing, made detailed credibility determinations, and rendered a twenty-five-page written decision concluding that defendant's counsel had apparent authority to enter into a binding settlement agreement with plaintiffs.

On appeal, defendant alleges that the record developed at the hearing does not support the judge's decision. As she did before the trial court, defendant claims that the settlement should not be enforced because: (1) it was not in writing; (2) she specifically instructed her attorney not to settle the case; and (3) the parties' conduct after the settlement was allegedly completed indicated they believed the matter had not actually been resolved.

---

[2] In the Law Division, the parties agreed that the underlying facts of the dispute between the parties would be kept confidential and that plaintiffs' identities should not be disclosed. Therefore, plaintiffs were referred to as "Releasee 1" and "Releasee 2," and we adopt those designations here when referring to plaintiffs individually. For reasons that are not clear, defendant's identity was not similarly protected. In this opinion, however, we will refer to defendant and the witnesses who testified at the hearing by their initials to preserve the confidentiality the parties originally sought.

A-4522-16T2

After reviewing the record in light of the contentions advanced on appeal, we conclude that defendant's arguments are without merit, and we affirm substantially for the reasons set forth in Judge DeLuca's thoughtful and thorough decision.

The underlying procedural history and facts of this case, as developed at the hearing, are fully set forth in Judge DeLuca's decision, where he extensively detailed the parties' negotiations on a day-by-day, and sometimes on a minute-by-minute, basis. In light of the comprehensive nature of the judge's findings, only a brief summary is necessary here.

The factual dispute between the parties involved circumstances that occurred during a trip plaintiffs took with defendant in February 2016. On March 10, 2016, defendant retained an attorney, A.D., to represent her in a possible lawsuit against plaintiffs. A.D. testified that he advised defendant that they should attempt to settle the dispute for a monetary payment agreeable to both sides prior to filing a complaint. A.D. also told defendant that plaintiffs would reasonably insist that the terms of the settlement be kept confidential.

During April and May, A.D. and plaintiffs' attorney, G.R. exchanged a series of telephone calls, emails, and text messages in an effort to settle the

matter.[3] During this period, A.D. kept defendant apprised of the negotiations. Defendant expressed satisfaction with the progress and agreed with A.D. that the matter should be settled because she did not "want to be dragged" through a trial and "want[ed] it to be over." At all times, A.D. represented to G.R. that he had defendant's permission to negotiate and agree upon a settlement.

The negotiations drew to a close in June. A.D. and G.R. exchanged settlement figures. A.D. and defendant discussed plaintiffs' offer and she told A.D. to attempt to get some more money from them. A.D. testified that he and A.D. agreed that if he could get a specific sum from plaintiffs, A.D. could settle the case.

On June 16, G.R. proposed to A.D. that the parties settle the case by splitting the difference between their current offers. Because the resulting figure was within the range defendant desired, A.D. called G.R. and told him that defendant "had instructed him to relay that she would settle" for that amount. G.R. advised that he would check with plaintiffs and get back to A.D.

---

[3] Releasee 2 was represented by his own attorney, but that attorney agreed to let G.R. take the lead in negotiating a settlement for both plaintiffs.

A-4522-16T2

The next day, G.R. emailed A.D. and told him, "I think we have a settlement" for the sum they had discussed. G.R. told A.D. he would call him on Monday to confirm.

A.D. testified that, over the weekend, defendant expressed some hesitancy in going ahead with the settlement because her father thought she could get more money. However, defendant did not tell him to withdraw the offer, and A.D. did not advise G.R. that defendant had changed her mind or was having any doubts.

At 8:05 a.m. on June 21, G.R. sent an email to A.D. accepting defendant's settlement offer. G.R. also gave A.D. a draft confidential settlement agreement and release setting forth the terms of the settlement they had discussed. G.R. testified that he believed throughout the negotiations that A.D. was fully authorized to tender the settlement offer and resolve the case on defendant's behalf. When asked to explain why, G.R. stated:

> Well[,] we had been negotiating at that point for two months. As I mentioned, during the phone calls we would say we're going to speak to [our] respective clients, the numbers changed over time, which gave me the understanding that he had spoken and came back with different numbers. But absolutely, and you can see it reflected in some of the emails too. Let's go back and speak with our clients. I mean that's what attorneys do when you engage in settlement negotiations.

5

A.D. also testified that he believed that defendant had authorized him to negotiate on her behalf and to settle the matter within the parameters she gave him. Thus, he was surprised when defendant did not respond to his text messages after June 21. On July 1, defendant terminated A.D.'s representation and directed him to give her file to her new attorney, B.G.

On that same date, B.G. emailed G.R., who was on vacation, and told him that he was preparing to file a complaint against plaintiffs on defendant's behalf. Before doing so, however, B.G. said he wanted to give G.R. the opportunity to meet with him. When G.R. got home on July 11, he called B.G., expressed surprise at the contents of the email, and told B.G. that he had already settled the case with A.D. G.R. testified that B.G. just kept talking over him during the call. Because he wanted to make sure that B.G. did not proceed with filing a complaint, G.R. agreed to meet with him on July 13. He again told B.G. that the case was already settled, but B.G. continued to ignore him.

Plaintiffs then filed a declaratory judgment action against defendant and sought an order enforcing the settlement G.R. consummated with A.D. on June 21. Plaintiffs also obtained an order restraining defendant from disclosing any of the facts surrounding the trip she took with them that formed the basis of the parties' underlying dispute.

6

At the evidentiary hearing, defendant claimed that she never authorized A.D. to finalize a settlement on her behalf. She also asserted that A.D. never informed her that a confidentiality agreement would have to be part of any final settlement. B.G. testified that G.R. never alleged that the matter had already been settled during any of their conversations.

As correctly framed by Judge DeLuca, the issue to be resolved by him was whether A.D. possessed actual or apparent authority to consummate a settlement with G.R. on defendant's behalf. As the judge explained, the legal principles governing the proper adjudication of that issue are well established.

Our system strongly values the settlement of litigation, and we "strain to give effect to the terms of a settlement whenever possible." Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008) (quoting Dep't of Pub. Advocate v. N.J. Bd. of Pub. Utils., 206 N.J. Super. 523, 528 (1985)). "Where the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges." Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div. 1993). The burden to prove a settlement agreement is borne by the party seeking to enforce it. Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 475 (App. Div. 1997).

"[A]n attorney for a private party may settle a lawsuit based on actual or apparent authority to do so." Seacoast Realty Co. v. W. Long Branch Borough, 14 N.J. Tax 197, 202-03 (Tax 1994). Actual authority may be express or implied. Newark Branch, N.A.A.C.P. v. W. Orange Twp., 786 F. Supp. 408, 423 (D.N.J. 1992). Implied authority exists when "an agent is authorized to do what he [or she] may reasonably infer the principal desires him [or her] to do in light of the principal's manifestations and facts as he [or she] knows or should know them when he [or she] acts." Lampley v. Davis Mach. Corp., 219 N.J. Super. 540, 548-49 (App. Div. 1987). "The focus is on the agent's reasonable perception of the principal's manifestations toward him" or her. Newark Branch, N.A.A.C.P., 786 F. Supp. at 424.

Apparent authority arises when "the client's voluntary act has placed the attorney in a situation wherein a person of ordinary prudence would be justified in presuming that the attorney has authority to enter a settlement, not just negotiations, on behalf of the client." Amatuzzo, 305 N.J. Super. at 475; see also LoBiondo v. O'Callaghan, 357 N.J. Super. 488, 497 (App. Div. 2003) (stating that creation of apparent authority is based on "the actions of the principal, not the alleged agent"). Thus, implied actual authority depends on the agent's reasonable perceptions of the principal's actions; apparent authority

depends on a third-party's perceptions. An attorney is presumed to possess the authority to act on behalf of a client, a presumption which the client has a heavy burden of overcoming. Jennings v. Reed, 381 N.J. Super. 217, 231 (App. Div. 2005).

Based upon the evidence presented at the evidentiary hearing, Judge DeLuca concluded that defendant failed to satisfy that "heavy burden" here. In so ruling, the judge found that the testimony offered by A.D. and G.R. concerning the settlement negotiations was credible, while the accounts provided by defendant and B.G. were not.

The judge found that A.D. had the apparent authority to settle the case on defendant's behalf. As the judge explained, defendant admitted that she "understood and directed" A.D. to discuss settlement with G.R. During those negotiations, A.D. and defendant discussed "various settlement scenarios" on numerous occasions. Defendant never told A.D. to stop discussing settlement with G.R., and acknowledged in early June 2016 that she and A.D. "had 'already made the decision' to settle the matter out of court."

Judge DeLuca also found that on June 16, defendant and A.D. agreed upon a settlement amount that A.D. should relay to G.R. This settlement proposal included a confidentiality agreement and the judge found that defendant's

contrary allegation was not credible. The judge determined that defendant's "voluntary actions placed [A.D.] in a situation where a person of ordinary prudence, namely, [G.R.], would be justified in presuming that [A.D.] had the authority to enter into a settlement and not just negotiations on behalf of the client." Thus, when G.R. accepted A.D.'s offer on June 21, the settlement was consummated and became enforceable, despite the fact that defendant later refused to execute a written settlement agreement.

The judge rejected defendant's claim that G.R. acknowledged that the matter had not been settled when he agreed to meet with B.G. after defendant terminated A.D. The judge found that G.R. credibly testified that he repeatedly told B.G. that the matter was settled, and that he only met with B.G. to seek to stop him from filing a complaint.[4]

In sum, Judge DeLuca found that A.D., on behalf of defendant, made a settlement offer to G.R. on June 17, 2016. A.D. "had the apparent authority to

_____

[4] Because he found that A.D. had the apparent authority to consummate the settlement, Judge DeLuca stated it was not necessary to "reach the issue of whether [A.D.] had actual authority to settle the matter." However, the judge noted that if defendant was "of the view that [A.D.] exceeded his authority, [she] was free to pursue whatever claims she deem[ed] appropriate against" A.D. and his law firm. Releasee 1 states in his appellate brief that defendant subsequently brought an action against A.D. in the Law Division, but the record does not reveal the outcome of that proceeding.

make that offer. The offer on behalf of [defendant] was never revoked. On June 21, 2016, at 8:05 a.m., [p]laintiffs accepted the settlement offer when [G.R.] transmitted the Settlement Agreement to [A.D.] which incorporated the material terms discussed." Accordingly, the judge concluded "that a settlement exists and should be enforced." This appeal followed.

As already noted, defendant raises the same arguments on appeal as she did before Judge DeLuca. We discern no basis for disturbing the judge's rejection of these claims.

Our review of a trial court's fact-finding in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). The trial court enjoys the benefit, which we do not, of observing the parties' conduct and demeanor in the courtroom and in testifying. Ibid. Through this process, trial judges develop a feel of the case and are in the best position to make credibility assessments. Ibid. We will defer to those credibility assessments unless they are manifestly unsupported by the record. Weiss v. I. Zapinsky, Inc., 65 N.J.

Super. 351, 357 (App. Div. 1961). However, we owe no deference to a trial court's interpretation of the law, and review issues of law de novo. <u>Mountain Hill, L.L.C. v. Twp. Comm. of Middletown</u>, 403 N.J. Super. 146, 193 (App. Div. 2008).

Applying these standards, we conclude that Judge DeLuca's factual findings are fully supported by the record and, in light of those facts, his legal conclusions are unassailable. We therefore affirm substantially for the reasons that the judge expressed in his well-reasoned opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4522-16T2